UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| KEVIN M. BROWN, Sr. | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Case No. 18-CV-0430-CVE-FHM |
| MICHELLE LETTNUS, et al, | ) |  |
| Defendants. | ) |  |

## OPINION AND ORDER

Now before the Court is defendants' motion to dismiss and for summary judgment (Dkt. # 35). Defendants seek judgment on plaintiff's claims for deliberate indifference to medical needs and violations of the Health Insurance Portability and Accountability Act (HIPAA). For the reasons below, the Court will grant the motion and enter judgment in favor of defendants.

### I.

The following facts are undisputed: Plaintiff is an inmate appearing pro se. See Dkt. # 10, at 1. He was incarcerated at the Dick Conner Correctional Center (DCCC) in Hominy, Oklahoma between February 15, 2017 and August 1, 2018. See Dkt. # 34-1, at 2-3.[1] On February 23, 2018, plaintiff sustained an injury to his right eye. See Dkt. # 34-8, at 2. The following day, prison officials took him to Dean McGee Eye Institute (Dean McGee), a private ophthalmology practice.

---

[1] In assessing the undisputed facts, the Court relied on the exhibits and medical records attached to the special report (Dkt. 34). Plaintiff has not specifically controverted any information in these records, other than to point out that prison officials prepared the report, and that it does not contain an interview with defendant Sergeant Farmer. See Dkt. # 32. The special report is consistent with the procedures set forth in Martinez v. Aaron, 570 F.2d 317, 319 (10th Cir. 1978), but, in any event, the Court will accept plaintiff's allegations about Farmer as true for the purpose of this ruling.

Id. The ophthalmologist diagnosed plaintiff with an ocular laceration without prolapse or loss of intraocular tissue. Id. Plaintiff was prescribed a series of eyedrops and other medications, which did not include pain medication. Id. at 5. In the "history of present illness" section of the medical record, the ophthalmologist wrote: "Bandage in place; pain controlled." Id. at 2.

When plaintiff returned to the prison, the DCCC doctor prescribed Norco, a narcotic pain medication, for a week following the injury. See Dkt. # 34-4, at 2-3. Plaintiff attended follow-up visits at Dean McGee on February 28, 2018; March 16, 2018; March 30, 2018; and April 11, 2018. Id. at 6, 11, 19, 24. At each appointment, plaintiff complained about pain, and he often complained about loss of vision. Id. The ophthamologist gave him prescription eye medication and a patch with instructions on cleaning, but the treatment plan did not include narcotic pain medication. Id. at 6, 9, 11, 14, 22, 27. At the latter two appointments (March 30 and April 11, 2018), the ophthamologist stated that plaintiff could have Tylenol, as needed, for pain. Id. at 22, 27.

Back at DCCC, providers again dispensed Norco for pain on or about March 16, 2018. See Dkt. # 34-4, at 2. A later medical progress note indicates that DCCC providers may have believed the ophthamologist ordered the medication. Id. at 3. The progress note states: "[plaintiff] came back from another visit at [Dean McGee] and told nurses he was supposed to have something for pain . . . They again gave him Norco for a couple of days. When the provider came in on Monday, she reviewed the notes from [Dean McGee] again, nothing about giving him pain pills." Id. Plaintiff's medical records reflect that DCCC did not dispense any narcotic pain medication after March, 2018. Id. However, DCCC staff did give him Toradol, a nonsteriodial anti-inflammatory drug (NSAID), on April 14, 2018. Id. at 4.

Plaintiff's lawyer, Anita Bryant, contacted DCCC medical staff on two occasions in April about the prospect of dispensing more pain medication. See Dkt. # 34-4, at 3, 6. According to the medical progress note memorializing the calls, medical staff informed Bryant that Dean McGee did not prescribe any pain medication, and that plaintiff "has been very belligerent with nursing on several occasions over pain pills." Id. Plaintiff had previously authorized DCCC to release his medical information to Bryant. See Dkt. # 34-3, at 2.

Eventually, Dean McGee staff also complained about plaintiff. See Dkt. # 34-8, at 30. Dr. Smart, an opthamologist, wrote a letter dated April 11, 2018, notifying prison officials that:

> We evaluated [plaintiff] on 4/11/18. He has a history of trauma to the right eye leading to worsened vision that, at this time, is deemed to be inoperable. Since his initial encounter he has been noted to be very disrespectful and aggressive during patient encounters.

Id. The corresponding progress note echoed these comments, and stated that "techs and physicians all independently noted this during interaction with pt [patient]." Id. at 27. Dr. Smart asked DCCC officials to administer a psychiatric evaluation "in hopes that this behavior may be corrected at subsequent visits." Id. at 30. He instructed that plaintiff could "follow up at Dean McGee Eye Institute in three months for repeat evaluation, [or] sooner as needed for intractable pain." Id.

Dr. Smart's opinion that plaintiff should have a follow-up appointment in three months conflicts with the medical progress note memorializing plaintiff's April 11, 2018 visit. See Dkt. # 34-4, at 27. The "Follow Up/RTC" section of the progress note states "return to clinic 4 weeks." Id. Consistent with the progress note, it appears a follow-up visit was originally scheduled for May 14, 2018. See Dkt. # 36, at 2.[2] Sergeant Farmer drove plaintiff to a place near Dean McGee, but he

---

[2] Defendants have not specifically controverted plaintiff's version of events regarding the May 14, 2018, Dean McGee appointment. The Court, therefore, accepts those specific allegations as true.

3

turned the van around without allowing plaintiff to attend the appointment. Id. The uncontroverted allegations reflect that Farmer lied about plaintiff's behavior, which caused the cancellation. Id.

Four days after the missed appointment, on May 18, 2018, plaintiff experienced "great pain" in his eye.[3] See Dkt. # 36, at 2. DCCC medical staff stated that plaintiff "was not coming to Medical at all for a shot for pain," despite repeated requests from plaintiff, his case manager, and his attorney.[4] Id. Plaintiff filed a grievance based on the refusal to dispense pain medication and the missed Dean McGee appointment. See Dkt. # 10, at 10; see also Dkt. # 34-10, at 4.

Around the same time, plaintiff underwent a psychiatric evaluation at DCCC. See Dkt. # 34-4, at 8. The evaluation states: "[plaintiff] was seen on his unit at the request of medical staff. Due to [his] anger and hostility towards others he is subject to refusal for further treatment unless his behavior can improve." Id. The evaluation further reflects that plaintiff refused to participate and "walk[ed] away angry" from the clinician. Id. On May 29, 2018, DCCC officials spoke with an administrator at Dean McGee, who required plaintiff to sign a behavioral contract before an ophthamologist would see him again. Id. at 9. The progress note memorializing the call reflects that the Dean McGee administrator expected to see plaintiff for a follow-up visit in three months. Id. DCCC medical staff stated that plaintiff "was already due back, and [the Dean McGee administrator] said there was some contraindication in the record." Id. Plaintiff signed the behavioral contract

---

[3]  The Court, again, accepts plaintiff's uncontroverted allegations regarding his May 18, 2018 request for medical care, as they were not specifically addressed in defendants' filings.

[4]  In his amended complaint, plaintiff also appears to allege that he wanted DCCC medical staff to remove blood from his eye. See Dkt. # 10, at 12. However, elsewhere in his filings, plaintiff admits that he needed an operation to remove the blood, and that Dean McGee was going to perform that procedure. See Dkt. # 36, at 17.

4

several days later, and the follow-up appointment was scheduled for July 3, 2018. Id. at 11; see also Dkt. # 34-8, at 33.

Plaintiff attended the July 3, 2018 appointment at Dean McGee without incident. The progress note reiterated that plaintiff's condition was inoperable, noting: "B scan last visit with funnel RD, reviewed with Dr. Shukla, inoperable, rec[commend] comfort measures." See Dkt. # 34-8, at 36. The ophthamologist prescribed more eye drops and some tinted prescription glasses. Id. at 31-32. As to pain, the progress note states: "currently on PF QD and atropine, could increase to PF TID QD to help control pain." Id. at 36. It is not clear from the record what "PF" is, but the prescription did not include narcotic pain medication. Id. at 43.

Plaintiff filed two more grievances in July, 2018, which do not appear to form the basis of his claims.[5] See Dkt. # 36, at 9. On August 1, 2018, plaintiff was transferred from DCCC - where all claims arose - to the James Crabtree Correctional Center. See Dkt.# 34-1, at 3.

Plaintiff appears to allege three separate claims stemming from the above facts. He raises a HIPPA violation, based on the disclosure of medical information to his lawyer, Anita Bryant (hereinafter, "Count 1"). See Dkt. # 36, at 4; see also Dkt. # 10, at 9. The Court discerns that he also raises two claims for deliberate indifference to medical needs. "Count 2" pertains to Farmer's failure to take plaintiff to his May 14, 2018 follow-up appointment at Dean McGee. See Dkt. # 10 at 3. "Count 3" pertains to DCCC medical staff's refusal to administer pain medication. Id. at 2, 11.

---

[5] Plaintiff complained that he was not receiving his prescription glasses quickly enough, and that medical staff informed him that the only way to get new cotton and tape for his eye was to "take the old [materials] off." See Dkt. # 36, at 9. These allegations appear in the summary judgment response, but they were not the focus the amended complaint (Dkt. # 10). In any event, they are frivolous and do not establish any constitutional violation.

Defendants seek dismissal or summary judgment on all claims. See Dkt. # 35. They argue that the undisputed facts demonstrate there was no constitutional violation, and that they are entitled to qualified immunity.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). A "dispute about a material fact is 'genuine' " when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. At the summary-judgment stage, the court "view[s] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." Hiatt v. Colo. Seminary, 858 F.3d 1307, 1315 (10th Cir. 2017) (quotations omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotations omitted).

Ordinarily, the movant bears the burden to show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. See Hiatt, 858 F.3d at 1315. However, once a defendant asserts the defense of qualified immunity, the plaintiff must demonstrate "(1) that the defendant committed a constitutional violation and (2) that the right was clearly established." Thomson v. Salt Lake Cty., 584 F.3d 1304, 1325-26 (10th Cir. 2009) (Holmes, J., concurring). A court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first," Pearson v. Callahan, 555 U.S. 223, 236 (2009), "and

may resolve the question by finding either requirement is not met." Mascorro v. Billings, 656 F.3d 1198, 1204 (10th Cir. 2011). In determining whether a plaintiff has satisfied this two-part burden, the court generally should "adopt" the plaintiff's "version of the facts." Id. at 1325 (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). At the summary-judgment stage though, a "plaintiff's version of the facts must find support in the record." Id. Thus, the court may reject plaintiff's version of the facts if it is "'so utterly discredited by the record that no reasonable jury could have believed' it." Id. (quoting Scott, 550 U.S. at 380)).

### III.

Defendants move for summary judgment on plaintiff's claims for HIPAA violations (Count 1) and deliberate indifference to medical needs (Counts 2 and 3).

#### A. HIPAA Violation

In Count 1, plaintiff argues that defendants violated HIPPA by disclosing private medical information to his lawyer, Anita Bryant. See Dkt. # 36, at 4; see also Dkt. # 10, at 3. This claim fails because "HIPAA does not create a private right of action for alleged disclosures of confidential medical information." Wilkerson v. Shinseki, 606 F.3d 1256, 1257 n.4 (10th Cir. 2010). Further, plaintiff explicitly authorized the Oklahoma Department of Corrections to release his medical records to Bryant. See Dkt. # 34-3, at 2. Defendants are, therefore, entitled to summary judgment on Count 1.

#### B. Deliberate Indifference to Medical Needs

In Counts 2 and 3, plaintiff claims that defendants violated his right to adequate medical care by cancelling his May 14, 2018 appointment at Dean McGee and refusing to treat his pain. See Dkt. # 10, at 2, 3, 11. The Eighth Amendment obligates prison officials to "ensure that inmates receive

7

adequate . . . medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). To establish a violation, an inmate must show that prison official acted with "deliberate indifference to [the inmate's] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "A medical need is considered sufficiently serious . . . if the condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Al-Turki v. Robinson, 762 F.3d 1188, 1192-93 (10th Cir. 2014) (quotations). "Where a prisoner claims that harm was caused by a delay in medical treatment, he must show that the delay resulted in substantial harm." Id. at 1193. As to the subjective component, a prison official acts with the requisite state of mind, if the official "act[s] or fail[s] to act despite [the official's] knowledge of a substantial risk of serious harm" to the inmate's health. Farmer, 511 U.S. at 842.

"A prison . . . [official] who serves solely . . . as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if [the official] delays or refuses to fulfill that gatekeeper role." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (quotations omitted). However, "a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980).

(i) <u>Count 2: The Missed Dean McGee Appointment</u>

Plaintiff contends that he missed his fifth follow-up appointment at Dean McGee, which was scheduled for May 14, 2018. See Dkt. # 36, at 2. The uncontroverted allegations show that Sergeant Farmer started to drive plaintiff to the appointment; turned around before arriving; and then lied about plaintiff's behavior. Id. Even assuming these facts are true, Farmer's conduct does not constitute an Eighth Amendment violation. It appears the missed May 14, 2018 appointment was

8

unnecessary, and/or the result of a scheduling error. In his April 11, 2018 letter, Dr. Smart stated that plaintiff did not need to be seen again until July. See Dkt. # 34-8, at 30. An administrator from Dean McGee reiterated this point on May 29, 2018, again citing the three-month time frame for a follow-up appointment. See Dkt. # 34-4, at 8. Plaintiff, therefore, has not demonstrated his eye condition mandated the ophthamologist's attention on May 14, 2018.

Plaintiff also has not alleged or demonstrated that waiting until July 3, 2018 to see the ophthamologist "resulted in substantial harm." Al-Turki v. Robinson, 762 F.3d at 1193. Plaintiff's condition was inoperable on April 11, 2018, and the medical records confirm that it remained inoperable on July 3, 2018. See Dkt. # 34-8, at 30, 36. To the extent the alleged harm consisted of increased pain, neither visit resulted in a prescription for pain medication. Id. On this record, plaintiff cannot satisfy the objective component of his claim as to Count 2.

(ii) Count 3: Refusal to Provide Care at DCCC Medical

In Count 3, plaintiff alleges that prison officials refused to see him in the DCCC medical unit to adequately treat his pain. Although the complaint and the summary judgment response both make numerous general allegations of this nature, the filings cite only one specific date when prison officials refused care: May 18, 2018. See Dkt. # 10; see also Dkt. # 36.[6] Even assuming there were multiple instances where plaintiff was denied access to the medical unit, he cannot establish deliberate indifference.

As to the objective component, the only alleged harm is pain. See Dkt. # 10, at 11 ("All [plaintiff] ask[ed DCCC staff] to do is to move me back to [a preferable housing unit], take me to

---

[6] One page of the summary judgment response cites the date as February 18, 2018. See Dkt. # 36, at 2. However, the Court discerns this was a scrivener's error, as that date occurred before the eye injury, and the associated facts clearly refer to the May 18, 2018 incident.

9

all my Dean McGee eye appts, [and] give me all the pain medication[.] That's it."). While "not every twinge of pain suffered . . . is actionable," substantial pain can satisfy the objective-harm prong of the deliberate-indifference test. See Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000). However, a complaint alleging that plaintiff was not given pain medication, but was instead given other treatment, "amounts to merely a disagreement with [the doctor's] medical judgment concerning the most appropriate treatment." Gee v. Pacheco, 627 F.3d 1178, 1192 (10th Cir. 2010). See also Carter v. Troutt, 175 Fed. App'x 950 (10th Cir. 2006) (unpublished) (finding no Eighth Amendment violation by prison doctor who refused to prescribe a certain pain medication where he prescribed other medications for the inmate); Ledoux v. Davies, 961 F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating physician, as well as his contention that he was denied treatment by a specialist is . . . insufficient to establish a constitutional violation.").

Here, plaintiff was under the care of a specialist, who declined to prescribe any pain medication. See Dkt. # 34-8, at 4-5, 9. Nevertheless, DCCC officials dispensed Norco in the month following the injury. See Dkt. # 34-4, at 2-4. They also dispensed an NSAID on April 14, 2018. Id. By the time that plaintiff demanded a "pain shot" on May 18, 2018, see Dkt. # 36, at 17, his ophthamologist had specifically determined that his pain should be managed via eyedrops and Tylenol. See Dkt. # 34-8, at 22. Under these circumstances, plaintiff has not demonstrated that he was seriously harmed by prison officials' refusal to give him a pain shot.

Plaintiff also failed to satisfy the subjective component of the deliberate-indifference test. The record reflects that prison officials appropriately discharged their gatekeeper function by taking plaintiff to a specialist on the day after his injury and on five other occasions between February and

10

July. See Dkt. # 34-8, at 2-33. When plaintiff became unhappy with his care at Dean McGee, Dr. Bowler of DCCC even agreed to contact Triad Eye Care, another ophthamologist, for a second opinion. See Dkt. # 34-4, at 10. There is also no indication prison officials consciously disregarded plaintiff's concerns. Instead, his DCCC medical records reflect that when prison officials attempted to provide care, plaintiff was combative and uncooperative. For example, DCCC progress notes entered between March and May 2018 reflect that it was "difficult to know his honesty in regard to level of pain discomfort," because plaintiff had a "history of excessive narcotic request[s]" and was "belligerent with nursing on several occasions over pain pills." Dkt. # 34-4, at 2-3. Plaintiff also refused to allow DCCC staff to examine his eye on multiple occasions and accused them of withholding pain medication because he was African-American. Id. at 4, 6, 10. The record demonstrates that defendants did not recklessly disregard a substantial risk of harm, and Count 3 fails as a matter of law.

## IV.

Based on the foregoing, the Court finds that plaintiff has not met his burden to establish a HIPAA violation or either component of his deliberate-indifference claim. As a result, he has not established a constitutional violation and cannot make the first showing necessary to overcome the defendants' assertion of qualified immunity. The Court will grant summary judgment in favor of defendants on all claims.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Defendants' motion to dismiss, or for summary judgment (Dkt. # 35) is **granted.**

2. A separate judgment is entered herewith.

**DATED** this 6th day of January, 2020.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE